UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| W. GARY OLSON,<br><br>   Plaintiff,<br><br>  v.<br><br>EDWINA S. UEHARA, *et al.*,<br><br>   Defendants. | Case No. C13-0782RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. #147. Defendants seek summary dismissal of all remaining claims in this case. Plaintiff argues that there are material questions of fact on all claims, and therefore summary judgment is not appropriate. Dkt. # 155. For the reasons set forth below, the Court GRANTS Defendants' motion summary judgment and DISMISSES this case.

## II. BACKGROUND

In ruling on the parties' prior cross-motions for partial summary judgment, this Court set forth the facts relevant to this case and incorporates them by reference herein. Dkt. #133.

## III. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

ORDER
PAGE - 1

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

### B. Prior Ruling on Plaintiff's Employment Status

This Court has previously determined that Plaintiff was not a faculty member at the time of his termination from employment, but was instead considered to be a Professional Staff employee. Dkt. #133 at 7-8. This is significant because Professional Staff employees are employed "at-will" and are not subject to the same policies and procedures as faculty members. Indeed, the Court has already determined that the Faculty Code did not apply to him at that time. *Id.* The Court has further determined that, at the time of his employment separation, Plaintiff had no legitimate interest in continued employment. *Id.* at 8-10. However, the Court also determined that Plaintiff had been appointed as Lecturer, a faculty position, during the 2010-2011 academic year, which ended in June 2011. *Id.* at 8. The Court's prior rulings

ORDER
PAGE - 2

continue to inform the Court with respect to the remaining claims in this matter, as further discussed below.

### C. Retaliation Under WLAD

Plaintiff first brings a claim under Washington's Law Against Discrimination ("WLAD"), alleging that he suffered retaliation for refusing to implement University policies he believed were discriminatory. Dkt. #22 at ¶ ¶ 98-104. Specifically, he testified that he believed University policies that "satisfactory progress and satisfying a loan was defined by completing ten credits, being registered for ten credits" made it more difficult for the economically poorer students to maintain their financial aid status. Dkt. #149, Ex. E at 45:6-11 and 46:2-9. Thus, he utilized what he claims to be a University-wide practice of awarding non-degree credits to those students, in an effort to lessen the discriminatory effect of the general minimum credit requirement and related policies. Dkt. #155 at 16.

RCW 49.60.210(1) provides:

> It is an unfair practice for any employer . . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

*Id.* To maintain a retaliation claim under the WLAD, chapter 49.60 RCW, a plaintiff must establish that (1) he participated in a statutorily protected activity, (2) an adverse employment action was taken against him, and (3) his activity and employer's adverse action were causally connected. *Hollenback v. Shriners Hosps. For Children*, 149 Wn. App. 810, 821, 206 P.3d 337 (2009). Plaintiff need not show that retaliation was the only or "but for" cause of the adverse employment action, but he or she must establish that it was at least a substantial factor. *Allison v. Housing Auth. of City of Seattle*, 118 Wn.2d 79, 85-96, 821 P.2d 34 (1991). Defendants

argue, and the Court agrees, that Plaintiff has no evidence to support the first prong of this standard.

There is no evidence in the record supporting Mr. Olson's contention that he was granting "ghost credits" to students in order to alleviate what he believed were discriminatory policies at the time he engaged in that action. Indeed, his own email correspondence with the financial aid office states that he was granting the credits for the purpose of qualifying such students for the financial aid they would receive if they were registered full time rather than less than full time. Dkt. #165, Ex. A at 1. Significantly, he notes that he granted "ghost credits" to those students who had "completed requirements, but need[] to be registered for 10 credits." *Id.* (emphasis added). Further, his deposition testimony corroborates that intent. Dkt. #149, Ex. E at 83:14-84:3, 84:14-21, and 85:13-22. Likewise, he admits that there is no evidence of any intent on behalf of the School of Social Work or the University to discriminate against disabled or minority students through the implementation of their policies. *See* Dkt. #149, Ex. E at 138:8-13. While he may now attempt to justify his actions by asserting his belief that University policies had a discriminatory effect on certain classes of students, there is no evidence to support that position at the time he was granting such credits.

Further, Plaintiff has not expressed any belief of retaliatory intent as motivation for his termination. Defendant Uehara made the decision to terminate him. However, he has testified that she was not "out to get [him]." Dkt. #149, Ex. E at 137:6-12. He further testified that Ms. Uehara was "very committed to helping disadvantaged students" but that she disagreed with the way he "went about it." Dkt. #149, Ex. E at 138:14-22. He also testified that Ms. Uehara wanted him to help disadvantaged students, but wanted him to do it in other ways. Dkt. #149,

ORDER
PAGE - 4

Ex. E at 139:2-21.  He ultimately characterized the conflict as a difference in "academic principles."  Dkt. #149 at 143:12-17.

Finally, even if Plaintiff were able to make a *prima facie* case of retaliation under the WLAD, Defendants have demonstrated that there was no pretext for his termination.  *See Renz v. Spokane Eye Clinic*, 114 Wn. App. 611, 618-19, 60 P.3d 106 (2002).  In *Renz*, the Washington Court of Appeals explained:

> if the employer produces some evidence of a nondiscriminatory reason for the discharge, the temporary presumption of retaliatory discharge established by the prima facie evidence is rebutted and removed.  Once the presumption is removed, the burden shifts back to the employee.  The employee must then create a genuine issue of material fact by showing that the employer's stated reason for the adverse employment action was a pretext for what was a discriminatory or retaliatory purpose.  An employee can demonstrate that the reasons given by the employer are not worthy of belief with evidence that: (1) the reasons have no basis in fact, or (2) even if based in fact, the employer was not motivated by these reasons, or (3) the reasons are insufficient to motivate an adverse employment decision.  If the employee fails to do this, the employer is entitled to dismissal as a matter of law.

*Id.* (citations omitted).

Here, Defendants were required to meet certain criteria established by federal law to participate in, *inter alia*, federal loan and grant programs.  *See* Dkt. #147 at 11.  The internal audit triggered by Mr. Olson's email regarding his awarding of "ghost credits" ultimately concluded that students received more than $200,000 in financial aid that they were not entitled to as a result of the "ghost credits" granted by Mr. Olson.  Dkt. # 156, Ex. A.  This is what motivated Defendants' decision to discipline.  Dkt. #156, Exs. A, B, and C.  The Dean of the School of Social Work specifically commented that while Mr. Olson's motivations appeared to be altruistic, the result of his actions was a "significant negative impact" on the University and the School, particularly because they would have to pay back financial aid and scholarship

ORDER
PAGE - 5

monies that had been incorrectly awarded to students who would not have otherwise qualified for financial aid. Dkt. #156, Ex. C at 75-76. Plaintiff has failed to demonstrate that the stated reason for discipline has no basis in fact, nor has Plaintiff demonstrated that Defendants were not motivated by that reason or that the reason is insufficient to motivate the employment decisions in this case.

As a result, Plaintiff fails to establish that he engaged in a statutorily-protected activity that would trigger potential liability under the WLAD, or that the reason for his disciplinary action was pretextual in any manner. Accordingly, this claim is DISMISSED.

**D. First Amendment Retaliation**

Plaintiff also brings several claims of alleged retaliation for exercising his various rights under the First Amendment of the United States Constitution. Dkt. #22 at ¶ ¶ 129-145, 172-183 and 184-195. In order to determine whether a government employer impermissibly retaliated against an employee for engaging in protected speech, the Court must follow a sequential five-step inquiry. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) ("unravel[ing]" and clarifying the test set forth in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, (1968)). First, the plaintiff bears the burden of showing that the speech addressed an issue of public concern. *Id.* (citing *Connick v. Myers,* 461 U.S. 138 (1983)). Second, the plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee. *Id.* at 1071 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006)). Third, the plaintiff bears the burden of showing the employer "took adverse employment action . . . [and that the] speech was a 'substantial or motivating' factor in the adverse action." *Id.* (citing *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006)). "[B]ecause these are sequential steps, a plaintiff's failure to satisfy a single one necessarily concludes [the Court's] inquiry."

*Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961-62 (9th Cir. 2011) (internal quotation marks and citations omitted).  If the plaintiff is able to satisfy the first three steps, "the burden shifts to the [employer] to show: (4) whether [it] had an adequate justification for treating the employee differently from other members of the general public; and (5) whether [it] would have taken the adverse employment action even absent the protected speech."  *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (internal quotation marks and citations omitted).

  *1. Matters of Public Concern*

  The Court first turns to whether Mr. Olson's speech touched on a matter of public concern.  In his opposition to summary judgment, Plaintiff focuses on two areas of "speech" – first, his plan to publicize the availability of Soc 599B registration on his blog, and second, awarding grades and credit for Soc 599B.  Dkt. #155 at 22.  To determine whether a plaintiff spoke on a matter of public concern, a court examines the content, form, and context of the speech to determine if it was made on a matter of public concern, with content being the most important factor.  *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Havekost v. U.S. Dep't of the Navy*, 925 F.2d 316, 318 (9th Cir. 1991). "The employee's motivation and the chosen audience are among the many factors to be considered in light of the public's interest in the subject matter of the speech." *Johnson v. Multnomah County, OR*, 48 F.3d 420, 425 (9th Cir. 1995). When the speech is not directed towards the media or the public at large, it is unlikely that it was speech touching on a matter of public concern. *Roe v. City and County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997). Further, "[s]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Eng*, 552 F.3d at 1070 (*citing Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)).

ORDER
PAGE - 7

With respect to Plaintiff's plan to post certain information to his blog, the Court finds that Plaintiff's speech touches on a matter of public concern, but not for the reasons propounded by Plaintiff. Plaintiff focuses his analysis on the information he planned to post, but that he admits was never actually posted. Dkts. #22 at ¶ 39, #155 at 12 and #156, Ex. G at 161:13-19. Thus, this Court must examine the speech that did occur, which was his communication to the financial aid office that he would like to post certain information on his blog. Dkts. #22 at ¶ 38 and #165, Ex. A. In *Desrochers v. City of San Bernardino*, the Ninth Circuit Court of Appeals held that the essential question as to whether a public employee's speech involves matters of public concern for purposes of a First Amendment retaliation claim, is whether the speech addresses a matter of public as opposed to personal interest. *See Desrochers v. City of San Bernardino*, 572 F.3d 703, 708 (9th Cir. 2009). The Court finds that Plaintiff's communication, while only internal, does touch on a matter of public concern, namely, credits available to qualify students for financial aid. *See id.* at 714.

With respect to Plaintiff's argument that awarding "ghost credits" for Soc 599B is protected speech, the Court is not convinced. Plaintiff relies on *Brown v. Li*, 308 F.3d 939 (9th Cir. 2003) for the proposition that awarding credit is protected speech. That argument misconstrues the holding in *Brown*. In that case, the Ninth Circuit Court of Appeals determined that thesis committee members had the right not to approve a student's thesis, especially where the names of the members of the committee were in the thesis and they were jointly responsible for the content. *Brown*, 208 F.3d 952. That is not like the instant situation. Moreover, while there are Circuits that have recognized a protected First Amendment right in the letter grade assigned by a professor, the Court is not aware of any case finding such a protected right in granting "ghost credits" for no real work performed. *See Parate v. Isobar*,

ORDER
PAGE - 8

868 F.2d 821, 828 (6th Cir. 1989). Indeed, other Circuits have criticized *Parate*, distinguishing the rights of professors in the classroom versus those out of the classroom, and allowing University officials to make changes with respect to grades. *See*, *e.g.*, *Brown v. Armenti*, 247 F.3d 69 (3d. Cir 2001); *Stronach v. Va. State Univ.*, 2008 U.S. Dist. LEXIS 2914 (E.D. Va. Jan. 15, 2008).

    2. *Public Employee Versus Private Citizen*

Because the Court has determined that Plaintiff's inquiry to the Financial Aide office regarding "ghost credits" involved matters of public concern, the Court must next determine whether Mr. Olson was speaking in his capacity as a public employee or whether he was speaking as a private citizen. *See Eng*, 552 F.3d at 1070-71. The Court agrees with Defendants that Mr. Olson was speaking in his capacity as a public employee.

"If [the plaintiff's] speech owes its existence to his position as a teacher, then [the plaintiff] spoke as a public employee, not as a citizen, and our inquiry is at an end." *Johnson* 658 F.3d at 966 (internal quotations omitted). Speech by a teacher while at school and during school hours will more than likely be considered speaking "as a teacher" and not "as a citizen." *See Johnson* 658 F.3d 967. Likewise, the Ninth Circuit has explained that "teachers do not cease acting as teachers each time the bell rings or the conversation moves beyond the narrow topic of curricular instruction. . . . Rather . . . teachers *necessarily* act as teachers for purposes of a *Pickering* inquiry when at school or a school function, in the general presence of students, in a capacity one might reasonably view as official." *Johnson* 658 F.3d 967 (*citing Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522-23 (9th Cir. 1994) (emphasis in original).

Here, any speech Mr. Olson alleges was the basis for retaliation was made in his role as a public employee. Indeed, the very purpose of his inquiry to the Financial Aid office was to

ORDER
PAGE - 9

ascertain that he was appropriately awarding "ghost credits" to students in order to render them eligible for financial aid. *See* Dkt. #149, Ex. E at 83:14-84:3 and 84:14-21. Further, the speech was made via his work email, during regular school hours. See Dkt. #165, Ex. A. Thus, Plaintiff cannot prove the second element of his retaliation claim as a matter of law and his claim must be dismissed.

    3. *Speech as Motivating Factor*

Even if Plaintiff could demonstrate that he was speaking as a private citizen and not as a public employee, the Court finds that he cannot demonstrate that his speech was the motivating factor for his discipline. Indeed, Plaintiff's own testimony belies that such motivation existed. Plaintiff testified that he had made his practice of awarding ghost credits known to faculty members and administrators prior to his discipline, and that some agreed with his approach while others did not. *See* Dkt. #156, Ex. G at 48:15-49:7. At the same time he acknowledges that he had been a "model employee" for 27 years, with no history of discipline, and that he had engaged in such practice "for several years openly." Dkt. #155 at 12. Further, as discussed above, it is clear that the practice of awarding "ghost credits," along with the results of the audit (concluding that students had received more than $200,000 in financial aid to which they were not entitled), were the motivation for the discipline, not Mr. Olson's communication with the Financial Aid office itself. *See* Section C., *supra*. As a result, Plaintiff cannot prove the third element of his retaliation claim, and the claim must be dismissed.

    **E. Breach of Contract**

Plaintiff continues to argue that his resignation in lieu of termination constitutes a breach of contract because he was a Faculty member, and therefore Defendants were required to follow the Faculty Code. *See* Dkt. #155 at 28-29. He apparently ignores this Court's prior

ORDER
PAGE - 10

finding that he was not a member of the Faculty at the time the decision was made to terminate his employment. *See* Section B., *supra.* For the same reasons previously discussed, Plaintiff was not subject to the provisions of the Faculty Code at the time of his resignation. Accordingly, this claim is dismissed.

### F. RCW 42.46.040 – Unlawful Enforcement of Unpublished Rule

Plaintiff next argues that his discipline was unlawful because it is based on policies that are not published, namely, he argues that the University of Washington has no published policy providing that he may not grant credits for students who do not demonstrate competence in the material of a course. Dkt. #155 at 29-30. Plaintiff asserts that Washington's Public Records Act ("PRA") creates a theory of liability under which he may recover. The Court is not persuaded. Plaintiff relies on RCW 42.56.040 in support of his argument. However, that section of the PRA simply mandates that state agencies must publish rules which guide the public in making public records requests to such agencies. *See* RCW 42.56.040(1). Plaintiff's reliance on RCW 42.56.040(2) is also misguided. That section provides that no member of the public shall be adversely affected without notice or publication of a "matter required to be published." RCW 42.56.040(2). Plaintiff provides no binding or persuasive legal authority providing any private cause of action under RCW 42.56.040 in the instant employment action. Nor does Plaintiff provide any binding or persuasive legal authority providing that RCW 42.56.040 applies to the policies of the University of Washington that he asserts should be published. Accordingly, this claim is also dismissed.

### G. Due Process Violations

Plaintiff also continues to argue that his Due Process rights have been violated. Dkt. #155 at 30-32. The Court dismissed the majority of Plaintiff's due process claims in its prior

ORDER
PAGE - 11

summary judgment Order. Dkt. #133. Plaintiff appears to argue that he was not provided fair notice that the conduct in which he was engaged (granting "ghost credits" to student for the purpose of making them eligible for financial aid) was not allowed by the University. Dkt. #155 at 30-32. Plaintiff provides no meaningful discussion of this alleged right, nor does he provide any legal authority or discussion thereof either on point or even similar to the instant situation. Instead, he states in conclusory manner that civil litigants are entitled to a "constitutional fair notice." *Id.* Without more, he cannot overcome Defendants' motion. Accordingly, the remaining due process claims are also dismissed.

### H. 11th Amendment Immunity

Defendants argue that Plaintiff is precluded from bringing suit against the University of Washington or any individual defendants sued in their official capacities because they have not waived immunity under the 11th Amendment. Dkt. #147 at 13-14. Plaintiff concedes this argument with respect to any claims arising under 42 U.S.C. § 1983, except that he apparently believes that these Defendants are not immune to injunctive relief. Dkt. #155 at 32. Because Plaintiff concedes that these Defendants have immunity from the Section 1983 claims, all such claims against the University of Washington and the official capacity individual defendants are dismissed.

### I. Alleged Violations of the Washington State Constitution

In their motion for summary judgment, Defendants argued that Plaintiff is not entitled to recover for any alleged violations of his rights under Washington State's Constitution. Dkt. #147 at 19-20. Plaintiff failed to respond to that argument. "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the

motion has merit." Local Rule CR 7(b)(2). Accordingly, all claims based on alleged violations of the Washington State Constitution are dismissed.

### J. Defamation and False Light

In their motion for summary judgment, Defendants also argued that Plaintiff has no evidence to support his claims for defamation or false light. Dkt. #147 at 20-22. Plaintiff failed to respond to that argument. "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rule CR 7(b)(2). Accordingly, all claims for defamation or false light are dismissed.

### K. Blacklisting

In their motion for summary judgment, Defendants also argued that Plaintiff is not entitled to recover for any alleged "blacklisting." Dkt. #147 at 23-24. Plaintiff failed to respond to that argument. "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rule CR 7(b)(2). Accordingly, all claims based on alleged "blacklisting" are dismissed.

### L. Qualified Immunity

In their motion for summary judgment, Defendants argue that all of the remaining individual defendants are entitled to qualified immunity. Dkt. #147 at 12-13. Rather than address the argument directly, Plaintiff asserts throughout his response that certain areas of law are clearly established and therefore the individual defendants do not enjoy qualified immunity. *See generally* Dkt. #155. Because the Court has dismissed all of Plaintiffs claims as a matter of law, as discussed herein, Plaintiff has failed to establish that any of the individuals violated his constitutional rights. As a result, the individual Defendants are entitled to qualified immunity and all claims against them must be dismissed.

ORDER
PAGE - 13

## IV.   CONCLUSION

Having reviewed Defendants' Motions for Summary Judgment, the Response in opposition thereto and Reply in support thereof, along with the declarations and exhibits thereto and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion for Summary Judgment (Dkt. #147) is GRANTED and all remaining claims are DISMISSED.

(2) This case is now CLOSED.

DATED this 2 day of December 2014.

*[signature]*
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE